IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Henry B. Shipman, | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| South Hanover Township Board of | : | |
| Supervisors, Chairman-Stephen | : | |
| Cordaro, Vice Chairman-Frank | : | |
| Tomasic, Supervisor-Bob Cassel, | : | |
| Supervisor-Nora Blair, and | : | No. 401 C.D. 2022 |
| Supervisor-Jack Studer | : | Submitted: September 30, 2022 |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                FILED: February 17, 2023

Henry B. Shipman (Shipman) appeals, *pro se*, from the Dauphin County Common Pleas Court's (trial court) April 20, 2022 order sustaining South Hanover Township (Township)[1] Board of Supervisors' and its Chairman - Stephen Cordaro's, its Vice Chairman - Frank Tomasic's, and its Supervisors - Bob Cassel's, Nora Blair's, and Jack Studer's (Studer) (collectively, Board) Preliminary Objections to Shipman's Complaint, and dismissing the Complaint with prejudice. Essentially, Shipman presents one issue for this Court's review: whether the trial court erred as a matter of law or abused its discretion by sustaining the Board's Preliminary Objections.[2] After review, this Court affirms.

---

[1] South Hanover Township is a Second Class Township.

[2] Shipman presents four issues in his Statement of Questions Involved: (1) whether the trial court afforded Shipman a fair opportunity to present evidence to support the Complaint; (2)

**Background**[3]

On January 4, 2022, Shipman filed the Complaint in the trial court alleging that the Board violated the Sunshine Act, 65 Pa.C.S. §§ 701-716, by appointing a Board member to fill a vacancy created by a former supervisor's resignation. *See* Shipman Br./Reproduced Record (R.R.), Attachment 1 (Complaint). At its November 23, 2021 public meeting, the Board accepted then-elected supervisor Rebecca Boehmer's (Boehmer) resignation, which created a vacancy on the Board. *See* Complaint ¶ 1 (R.R. at 2a).[4] The Board announced that it would accept letters of interest from Township residents willing to fill Boehmer's vacancy through the end of her term on December 31, 2021. *See* Complaint ¶ 4 (R.R. at 3a). On November 29, 2021, Shipman submitted a letter expressing his interest in being appointed to the Board. *See id.*

At its December 14, 2021 public meeting, following an executive session, and without publicly deliberating over other candidates, the Board appointed Studer to fill Boehmer's position. *See* Complaint ¶ 2 (R.R. at 2a). During the public comment portion of that meeting, Shipman expressed his concern regarding the Board's lack of transparency in Board business - i.e., the Board conducted more executive sessions than public meetings, and its post-executive

---

whether the Board had ex parte communications with the trial court before the trial court issued its April 20, 2022 order; (3) whether the trial court's opinion issued pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(a) clarified its reasoning for the April 20, 2022 decision; and (4) whether Shipman's Complaint was sufficient, despite being filed without his knowledge of Pennsylvania law and trial court rules. *See* Shipman Br. at 5. Because these issues are subsumed in the issue as phrased by this Court, they will be addressed accordingly.

[3] The facts are as alleged in the Complaint.

[4] Rule 2173 specifies: "[T]he pages of . . . the reproduced record . . . shall be numbered separately in Arabic figures . . . thus 1, 2, 3, etc., followed in the reproduced record by a small a, thus 1a, 2a, 3a, etc." Pa.R.A.P. 2173. Because Shipman's Reproduced Record pages are not numbered, and the Board filed a numbered Supplemental Reproduced Record (albeit, also in violation of Rule 2173) on August 11, 2022, for ease of reference, this Court will refer to the Reproduced Record pages as numbered by the Board.

session discussions were repetitive and consisted of "non-specific 'fluff.'" *Id*. Shipman again voiced his concerns regarding the Board's secrecy at the Board's December 28, 2021 public meeting. *See* Complaint ¶ 3 (R.R. at 3a). Shipman asked the Board at that meeting whether it deliberated or selected Studer while in executive session, and the Board responded that discussions and selection of Studer occurred in non-quorum and informal telephone calls among the four supervisors. *See id*.

On January 3, 2022, the Board published its agenda for the reorganization meeting, which reflected that the Board would consider a motion to accept Boehmer's refusal of the two-year supervisor term she was to begin January 1, 2022, and a motion to appoint Studer to that term. *See* Complaint ¶ 5 (R.R. at 3a). "In this appointment, the [Board] neither asked for 'letters of interest' from its residents to fill this vacancy[,] nor again[] publicly deliberated the characteristics and qualifications of the candidates, even if, by their oligarchic plans, they only had one candidate." *Id*.

On February 10, 2022, the Board filed the Preliminary Objections to the Complaint, therein asserting: (1) (Demurrer) the Complaint failed to state a valid cause of action under the Sunshine Act[5] (First Preliminary Objection);[6] (2) the Complaint should be stricken for lack of factual specificity, wherein Shipman avers only that the Board did not openly discuss the list of names of parties interested in the vacancy created by Boehmer's resignation, and the Complaint is devoid of any specific harm or damage caused, or prayer for relief therefrom (Second Preliminary Objection); and (3) the Complaint failed to conform to law or rule of court, in that it

---

[5] 65 Pa.C.S. §§ 701-716.

[6] The Board's First Preliminary Objection also appears to object on the basis that Shipman failed to state a valid cause of action under The Second Class Township Code (Code), Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §§ 65101-68701. *See* R.R. at 7a-8a. However, because Shipman's challenge in the Complaint and on appeal to this Court is limited to the Board's purported Sunshine Act violation, this Court's discussion is likewise limited to whether Shipman stated a valid cause of action under the Sunshine Act.

did not contain a notice to defend or a verification (Third Preliminary Objection). *See* R.R. at 4a-12a, 39a-48a. On February 16, 2022, the Board filed a praecipe to attach exhibits (December 14, 2021 and January 3, 2022 Board meeting minutes) that were inadvertently omitted from the Preliminary Objections. On February 22, 2022, Shipman filed a response to the Preliminary Objections, wherein he raised facts not included in the Complaint. *See* R.R. at 27a-38a, 49a-54a.

On April 7, 2022, the Board filed a Certificate of Readiness with the trial court relative to the Preliminary Objections. On April 11, 2022, Shipman filed an application for a status conference (Status Conference Application) "to facilitate a common understanding among the [trial c]ourt, the [Board,] and [Shipman] . . . [in] preparation for a timely hearing of the evidence[.]" R.R. at 59a. Also on April 11, 2022, Shipman filed an objection to the Board's Certificate of Readiness. On that same day, the trial court issued an order declaring that it would not entertain Shipman's Status Conference Application because he failed to provide a blank scheduling order as required by Dauphin County Local Rule 205.2(a)(3). On April 13, 2022, Shipman filed an amended Status Conference Application that contained the requisite blank scheduling order.

On April 20, 2022, the trial court sustained the Board's Preliminary Objections and dismissed Shipman's Complaint with prejudice.[7] *See* R.R. at 77a. By separate order entered April 20, 2022, the trial court denied Shipman's Status Conference Application because it had sustained the Board's Preliminary Objections. *See* R.R. at 76a. On April 21, 2022, Shipman appealed to this Court.[8]

---

[7] *Dismissal with prejudice* does not mean, as Shipman appears to interpret, that the trial court was biased. Rather, it is a legal term of art meaning "a judgement that dismisses a case due to the plaintiff's contentions not being proved[,]" and "the case cannot be tried again[.]" thelawdictionary.org/?s=with+prejudice (last visited Jan. 24, 2023.)

[8] "Our review of a trial court's order sustaining preliminary objections and dismissing a complaint is limited to determining whether the trial court abused its discretion or committed an

On June 3, 2022, the trial court issued its opinion pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(a) (Rule 1925(a) Opinion).[9] *See* R.R. at 93a-97a.

## Discussion

Shipman argues that the trial court erred by concluding that he failed to state a valid cause of action under the Sunshine Act. Shipman specifically asserts that he stated a viable claim because he alleged in the Complaint that the Board intentionally failed to comply with the Sunshine Act.

Preliminarily, Pennsylvania Rule of Civil Procedure (Civil Rule) 1028(a)(4) authorized the Board to object to the Complaint based on its legal insufficiency (demurrer). *See* Pa.R.Civ.P. 1028(a)(4).

> "The question presented in a demurrer is whether, on the facts averred, the law indicates with certainty that no recovery is possible. In reviewing a [trial] court's decision to grant a demurrer, our Court's standard of review is de novo." *Stilp v. Gen. Assembly*, . . . 974 A.2d 491, 494 ([Pa.] 2009) (citations omitted). Thus, we will affirm a trial court's order sustaining preliminary objections and dismissal of a complaint "only in cases that are clear and free from doubt that the law will not permit recovery" by the appellant. *Cap. City Lodge No. 12, Fraternal Ord. of Police v. City of Harrisburg*, . . . 588 A.2d 584, 586-87 ([Pa. Cmwlth.] 1991). In ruling on preliminary objections in the nature of a demurrer, this Court accepts as true all well-pleaded facts in the complaint and draws all

error of law." *Ward v. Potteiger*, 142 A.3d 139, 142 n.6 (Pa. Cmwlth. 2016) (quoting *Pub. Advoc. v. Brunwasser*, 22 A.3d 261, 266 n.5 (Pa. Cmwlth. 2011)).

On April 25, 2022, Shipman filed a Motion for Reconsideration in the trial court on the basis that the trial court failed to rule on the Board's Certificate of Readiness or his objections thereto. On April 28, 2022, the trial court issued an order refusing to entertain Shipman's Motion for Reconsideration in the absence of a proposed order.

[9] The trial court did not order Shipman to file a Concise Statement of Matters Complained of on Appeal pursuant to Rule 1925(b). However, on June 8, 2020, Shipman filed an application in this Court seeking to file one nunc pro tunc (Nunc Pro Tunc Application). On June 20, 2022, the Board opposed Shipman's Nunc Pro Tunc Application. By June 27, 2022 Order, this Court denied Shipman's Nunc Pro Tunc Application.

inferences reasonably deducible therefrom in favor of the nonmoving party. *Stone & Edwards Ins. Agency, Inc. v. Dep't of Ins.*, . . . 616 A.2d 1060, 1063 ([Pa. Cmwlth.] 1992). However, we "need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion." *Id.* (citing *Dep't of Pub. Welfare v. Portnoy*, . . . 566 A.2d 336 ([Pa. Cmwlth.] 1989)). And, in the face of doubt, our resolution should be in favor of reversing the grant of the demurrer.

*Vasquez v. Berks Cnty.*, 279 A.3d 59, 75-76 (Pa. Cmwlth. 2022).

Relevant here, Section 704 of the Sunshine Act states that, except for discussions subject to executive session,[10] "[o]fficial action[11] and deliberations[12] by a quorum[13] of the members of an agency shall take place at a meeting open to the public . . . ." 65 Pa.C.S. § 704. Section 708(a) of the Sunshine Act declares that "[a]n agency may hold an executive session . . . [t]o discuss any matter involving the . . . appointment . . . of any specific prospective public officer . . . ." 65 Pa.C.S. § 708(a). Thereafter, "[o]fficial action on discussions held [in executive session] shall be taken at an open meeting." *See* Section 708(c) of the Sunshine Act, 65 Pa.C.S. § 708(c). Specifically, "the vote of each member who actually votes on any resolution . . . must be publicly cast . . . ." Section 705 of the Sunshine Act, 65 Pa.C.S. § 705. When a Sunshine Act violation occurs, a trial court may invalidate a related official action. *See* Section 713 of the Sunshine Act, 65 Pa.C.S. § 713.

---

[10] Section 703 of the Sunshine Act defines *executive session*, in relevant part, as "[a] meeting from which the public is excluded[.]" 65 Pa.C.S. § 703.

[11] *Official action* is defined in the Sunshine Act, in part, to include "decisions on agency business . . . [and] . . . vote[s] taken by any agency on any motion, proposal, [or] resolution[.]" 65 Pa.C.S. § 703.

[12] The Sunshine Act defines *deliberation* as "[t]he discussion of agency business held for the purpose of making a decision." 65 Pa.C.S. § 703.

[13] Section 603 of the Code declares, in relevant part: "A quorum is two members of a three-member board of supervisors or three members of a five-member board of supervisors. An affirmative vote of a majority of the entire board of supervisors at a public meeting is necessary in order to transact any business." 53 P.S. § 65603.

6

Notably, when the General Assembly codified the Sunshine Act in 1998,[14] it expressly prohibited "meeting[s] involving the appointment or selection of any person to fill a vacancy in any elected office." 65 Pa.C.S. § 708(a)(1). Because Board supervisors are elected,[15] that exclusion prohibited the Board from holding meetings involving the appointment or selection of persons to fill Boehmer's vacancy. *See id.*; *see also* Edwin Kravitz, Jr., *Public Opinion v. Chambersburg Area School District: The Commonwealth Court Holds That Anonymous Voting for School Board Members Contravenes the Sunshine Act*, 5 Widener J. Pub. L. 681, 687-88 (1996) ("In response to the decisions of the [C]ommonwealth [C]ourt, the Pennsylvania legislature amended [S]ection 278(a)(1) [of the 1986 Sunshine Act, *formerly* 65 P.S. § 278(a)(1), such that] . . . when an elected office becomes vacant, the deliberations or meetings conducted to appoint or temporarily fill that position must be open to the public." (Footnote omitted)).

Before the Sunshine Act was codified, and after, when not considering appointments to fill elective office vacancies, Pennsylvania courts have concluded that straw votes, informal discussions, and information-gathering are not necessarily

---

[14] The Sunshine Act codified in 1998 repealed and reenacted the Act of July 3, 1986, P.L. 388, *as amended*, *formerly* 65 P.S. §§ 271-286 (1986 Sunshine Act). Section 8(a)(1) of the 1986 Sunshine Act, *formerly* 65 P.S. § 278(a)(1), provided only that an agency may hold an executive session:

> To *discuss* any matter involving the *employment*, *appointment*, termination of employment, terms and conditions of employment, evaluation of performance, promotion or disciplining *of any specific prospective public officer or employee* or current public officer or employee employed or appointed by the agency, or former public officer or employee, provided, however, that the individual employees or appointees whose rights could be adversely affected may request, in writing, that the matter or matters be discussed at an open meeting.

*Morning Call, Inc. v. Bd. of Sch. Dirs. of S. Lehigh Sch. Dist.*, 642 A.2d 619, 622 (Pa. Cmwlth. 1994).

[15] *See* Sections 402 and 403 of the Code, 53 P.S. §§ 65402-65403.

official actions that must take place at open meetings under the Sunshine Act. *See Smith v. Twp. of Richmond*, 82 A.3d 407 (Pa. 2013); *see also Kennedy v. Upper Milford Twp. Zoning Hearing Bd.*, 834 A.2d 1104 (Pa. 2003); *Cumberland Publishers, Inc. v. Carlisle Area Bd. of Sch. Dirs.*, 646 A.2d 69 (Pa. Cmwlth. 1994); *Morning Call, Inc. v. Bd. of Sch. Dirs. of S. Lehigh Sch. Dist.*, 642 A.2d 619 (Pa. Cmwlth. 1994). Although it is not clear what, if any, informal information-gathering or discussions could be held relative to appointments for elected offices, Section 703 of the Sunshine Act defines the term *meeting* as used in Section 708(a)(1) of the Sunshine Act's exclusion as "[a]ny *prearranged gathering* of an agency which is *attended or participated in by a quorum* of the members of an agency held *for the purpose of deliberating agency business or taking official action*." 65 Pa.C.S. § 703 (emphasis added). Moreover, "this Court has repeatedly held that official action taken at a later, open meeting cures a prior violation of the Sunshine Act." *Picone v. Bangor Area Sch. Dist.*, 936 A.2d 556, 563 (Pa. Cmwlth. 2007); *see also Ass'n of Cmty. Orgs. for Reform Now v. Se. Pa. Transp. Auth.*, 789 A.2d 811 (Pa. Cmwlth. 2002).

Accepting as true Shipman's allegations in the Complaint that the Board failed to comply with Sections 704 and 708(a)(1) of the Sunshine Act because the Board members emerged from executive session on December 14, 2021, and voted to appoint Studer to fill Boehmer's vacant position without "public deliberation over the candidates showing interest to serve and/or the basis for Studer's selection over any other candidates[,]" Complaint ¶ 2 (R.R. at 2a), Shipman's action could not prevail.

Shipman generally averred in the Complaint that the Board's "unbridled secrecy" must be stopped. Complaint ¶ 6 (R.R. at 3a). Shipman did not plead for the trial court to invalidate Studer's appointment because of "[a]ny prearranged gathering . . . attended or participated in by a quorum of [Board]

8

members . . . held for the purpose of deliberating [Studer's appointment] or taking official action [thereon]." 65 Pa.C.S. § 703. Although Shipman implied in the Complaint that the Board members' informal telephone discussions regarding Boehmer's replacement violated the Sunshine Act, he acknowledged that the Board ultimately voted thereon at the Board's December 14, 2021 and January 3, 2022 open meetings which he attended. *See* Complaint ¶¶ 2-3, 5 (R.R. at 2a-3a). Under the circumstances, the Complaint failed to state a valid cause of action upon which Shipman may be afforded relief under the Sunshine Act. Accordingly, the trial court did not abuse its discretion or err as a matter of law by sustaining the Board's First Preliminary Objection.

Shipman further argues that he was not aware of the Civil Rules and, thus, the Complaint should not be dismissed based on the Second and Third Preliminary Objections because he did his best as a *pro se* litigant to state his case, and he believed that he would have the opportunity to later hone and prove his case at a hearing. However, having determined that the Board raised the Second and Third Preliminary Objections in the alternative, *see* Rule 1925(a) Op. at 3, the trial court did not specifically rule thereon.

Notwithstanding, Civil Rule 1019(a) specifies that "[t]he material facts on which a cause of action or defense is based shall be stated in a concise and summary form." Pa.R.Civ.P. 1019(a). Civil Rule 1019(b) further declares that "[a]verments of time, place and items of special damage shall be specifically stated." Pa.R.Civ.P. 1019(f). Civil Rule 1028(a)(3) authorized the Board to object to the Complaint on the basis that it was insufficiently specific. *See* Pa.R.Civ.P. 1028(a)(3). "To determine if a pleading is sufficiently specific, a court must ascertain whether the facts alleged are sufficiently specific to enable a defendant to prepare his defense." *Unified Sportsmen of Pa. v. Pa. Game Comm'n*, 950 A.2d 1120, 1134 (Pa. Cmwlth. 2008).

9

Shipman declared in the Complaint that the Board should have publicly discussed the names of residents considered to fill Boehmer's vacancy, and that the Board's "unbridled secrecy" must be stopped. Complaint ¶ 6 (R.R. at 3a). He did not request the trial court to invalidate any Board action. The Board was left to guess what specific relief Shipman was seeking. Under the circumstances, Shipman's allegations under the Sunshine Act were not sufficiently specific to satisfy Civil Rule 1019's requirements. Accordingly, the trial court did not abuse its discretion or err as a matter of law by sustaining the Board's Preliminary Objections.

Further, Civil Rule 1018.1(a) mandates: "Every complaint filed by a plaintiff . . . shall begin with a notice to defend in substantially the form set forth in subdivision (b) [herein]." Pa.R.Civ.P. 1018.1(a). Civil Rule 1024(a) further requires:

> Every pleading containing an averment of fact not appearing of record in the action or containing a denial of fact shall state that the averment or denial is true upon the signer's personal knowledge or information and belief and shall be verified. . . . A pleading may be verified upon personal knowledge as to a part and upon information and belief as to the remainder.

Pa.R.Civ.P. 1024(a). Civil Rule 1028(a)(2) authorized the Board to object to the Complaint on the basis that it failed to conform to law or rule of court.

It is undisputed that Shipman's Complaint did not contain a notice to defend or a verification. Despite that Shipman filed the Complaint without the benefit of counsel, this Court has consistently held that "[a] *pro se* litigant is not absolved from complying with procedural rules." *City of Phila. Water Revenue Bureau v. Frempong*, 744 A.2d 822, 824 (Pa. Cmwlth. 2000). Accordingly, the trial court did not abuse its discretion or err as a matter of law by sustaining the Board's Preliminary Objections.

10

**Conclusion**

Based on the foregoing, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Henry B. Shipman, | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| South Hanover Township Board of | : | |
| Supervisors, Chairman-Stephen | : | |
| Cordaro, Vice Chairman-Frank | : | |
| Tomasic, Supervisor-Bob Cassel, | : | |
| Supervisor-Nora Blair, and | : | No. 401 C.D. 2022 |
| Supervisor-Jack Studer | : | |

## O R D E R

AND NOW, this 17th day of February, 2023, the Dauphin County Common Pleas Court's April 20, 2022 order is affirmed.

_____
ANNE E. COVEY, Judge